# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| ON TARGET SPORTING GOODS, INC., | ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | No. 4:04-CV-1644 CAS |
| ATTORNEY GENERAL OF THE UNITED STATES, et al., | ) ) ) ) | |
| Respondents. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on a motion for summary judgment by respondent, the Bureau of Alcohol, Tobacco, Firearms and Explosives, U.S. Department of Justice ("ATF"), pursuant to Fed. R. Civ. P. 56 against petitioner, On Target Sporting Goods, Inc. ("On Target"). On Target did not respond to respondent's motion. For the following reasons, respondent's motion for summary judgment will be granted.

### Background

On Target sold firearms under a federal firearms license in Valley Park, Missouri. ATF refused to renew On Target's federal firearm license after an inspection of the business revealed multiple violations of ATF's firearm disposition regulations. An ATF hearing officer upheld the agency's determination following an evidentiary hearing, and On Target now seeks de novo judicial review of the agency's adverse decision pursuant to 18 U.S.C. § 923(f)(3).

### Legal Standard

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all

of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir.), cert. denied, 528 U.S. 1063 (1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004).

A district court may grant summary judgment when reviewing a firearms-license revocation pursuant to 18 U.S.C. § 923(f)(3), provided no issues of material fact are in dispute. Cucchiara v. Secretary of Treasury, 652 F.2d 28, 29-30 (9th Cir. 1981) (affirming grant of summary judgment where licensee did not dispute factual evidence showing willful violation of record-keeping regulations), cert. denied, 455 U.S. 948 (1982); Fin & Feather Sport Shop, Inc. v. United States Treasury Dep't, 481 F. Supp. 800, 807 (D. Neb. 1979) (noting summary judgment is available under section 923(f)(3)).

**Facts**

The Court reviewed respondent's statement of undisputed material facts. The Court finds that there are no genuine issues of material fact in dispute. In accordance with Local Rule 4.01(E), all facts set forth in respondent's statement of undisputed material facts are deemed admitted because they were not specifically controverted by the petitioner. See E.D. Mo. L.R. 4.01(E). Only facts supported by evidence in the record will be deemed to be true. For purposes of summary judgment, the Court finds the following facts to be true.

On Target is owned by Paul Edward Haley ("Haley"). (Compl. ¶¶ 7-8). Haley was also the owner of another business that engaged in the sale of firearms called Haley's Hobbies. (Compl. ¶ 6). On June 8, 1993, Haley was interviewed by an ATF Inspector during an ATF inspection of Haley's Hobbies during which ATF reviewed the firearm records of Haley's Hobbies, including 231 ATF Form F4473s. (Defs.' Ex. 9, pages 1-3). During the inspection, ATF informed Haley about his general record keeping and firearm tracing responsibilities. (Defs.' Ex. 9, page 3).

On March 29, 1995, the ATF visited On Target to conduct a firearm tracing, and interviewed an On Target employee about the purchaser of a firearm traced with On Target's

firearm disposition records. (Defs.' Ex. 10, page 1). On August 6, 1996, Haley was interviewed by an ATF Inspector during a four hour long inspection of On Target. (Defs.' Ex. 12, page 1). During the August 6, 1996, inspection of On Target, ATF discussed firearm laws and regulations with Haley. (Defs.' Ex. 12, page 1). On August 6, 1996, Haley signed a form entitled "Review of Federal Firearm Regulations." (Defs.' Ex. 12, page 7). On the form is a section entitled "Required Records" which includes the headings: ATF Form 4473, Firearms Transaction Record; Bound Book Record (27 CFR 178.1259(e)); Report of Multiple Handgun Sales (27 CFR 178.216(a)) (Defs.' Ex. 12, page 7). On the form entitled "Review of Federal Firearm Regulations," beneath the headings discussed above, the form reads "on this date, 8/6/96, the above listed information was explained to me by ATF Inspector Bruce Absheer. I have received a copy of this document for my records. [signed] Paul E. Haley." (Defs.' Ex. 12, page 7).

At the administrative hearing, Haley was asked if he recalled speaking to Inspector Absheer, if he was very familiar with record keeping requirements, and if he was aware of the requirement to maintain firearm acquisition records in a timely fashion. Haley answered "yes" to these questions. (Defs.' Ex. 31, page 91).

### A. ATF's Inspections of On Target

ATF began an inspection of On Target on April 9, 2002, but was unable to complete the inspection on that date because On Target had failed to keep current with its firearm records from November 2001 through April 2002. ATF returned to On Target on April 16, 2002, June 11, 2002, June 24, 2002, and in January 2003, to complete the inspection. (Defs.' Ex. 31, pages 30-37 ). At the ATF Hearing, Haley testified regarding On Target's firearm records that he was "working for a different company other than On Target" and "got behind" and therefore did not

4

timely enter firearm acquisitions into the records from November 2001 through April 2002. (Defs.' Ex. 31, pages 50-52).

### B. On Target's Application For License Renewal

On September 16, 2003, ATF received an Application for Renewal of On Target's federal firearm license. (Defs.' Ex. 1). On October 30, 2003, the ATF notified On Target of the denial of On Target's application for renewal of the license. (Defs.' Ex. 2). On November 9, 2003, On Target requested an administrative hearing to contest the licensing decision. (Defs.' Ex. 3). After an amended notice of denial was served On Target on March 24, 2004, an ATF hearing was held on April 27, 2004. (Defs.' Ex. 6, Defs.' Ex. 31). On August 20, 2004, an ATF Hearing Officer upheld ATF's decision to deny renewal of On Target's license in a twelve page decision. (Defs.' Ex. 29). On October 1, 2004, ATF issued a final notice of denial, leading to the instant case. (Compl. ¶ 19).

### C. On Target's Firearm Sales

Among other issues referenced by the August 20, 2004, ATF Hearing Officer's decision, On Target's records included an ATF Form 4473 documenting the transfer of a Glock handgun by On Target to a customer on September 26, 2001. (Defs.' Ex. 15, pages 9-10). On Target's September 26, 2001 ATF Form 4473 contains a question and answer section for firearm purchasers to fill out, including the questions "are you under indictment or information in any court for a crime for which the judge could imprison you for more than one year" and "have you been convicted in any court of a crime for which the judge could have imprisoned you for more than one year?" On the form, the purchaser wrote "yes" in response to both questions. On the second page of the form, On Target's "manager" signed the form as "transferor." (Defs.' Ex. 15, pages 9-10).

On Target's records also included an ATF Form 4473 documenting the transfer of an Arsenal SLR 95 7.62 caliber rifle by On Target to a customer on September 29, 2001. (Defs.' Ex. 15, pages 4-5). The September 29, 2001, ATF Form 4473 contains a question and answer section for firearm purchasers to fill out, including the question "are you a United States citizen?" On the form, the purchaser wrote "no" in response to that question. On the second page of the form, On Target's "manager" signed the form as "transferor." (Defs.' Ex. 15, pages 4-5). Exhibit 15 also contains a listing of over 34 additional violations from 34 additional ATF 4473 forms documenting the transfers of firearms to other purchasers, including multiple forms without complete purchaser identification information. One form indicates the transfer of a firearm to a person who failed to answer the question "have you ever been adjudicated mentally defective or have you been committed to a mental institution?" (Defs.' Ex. 15, pages 1-2).

At the April 27 hearing, in response to these violations, Haley testified that "there were thousands of forms on file; however, only 375 were reviewed. And of the 375, if there's 35 forms incomplete, that's approximately 10 percent of the forms have errors on them." (Defs.' Ex.31). During the inspections discussed above, ATF attempted to reconcile On Target's physical inventory of firearms with its firearm acquisition and disposition records. ATF discovered that On Target could not account for either the identity of the purchaser or location of 51 firearms. (Defs.' Ex. 31 pages 57-60). On Target eventually filed an ATF "Federal Firearms Licensee Theft/Loss Report" regarding these 51 missing firearms with ATF on January 14, 2003. The form, signed by Haley under a certification that the information therein is true and correct, lists 51 separate shotguns, rifles, and pistols as lost or stolen from On Target. (Defs.' Ex. 18). At the ATF hearing, Haley testified that after January 14, 2003, he later found five of the 51

missing guns, but regarding the remaining 46 firearms, Haley said "we still do not have a disposition on those." (Defs.' Ex. 31, pages 62-63).

On Target's records included an ATF Form 4473 documenting a September 26, 2001, sale of a shotgun to a customer. On page 2, the form indicates that the background check on the purchaser was "delayed" and "no response provided within three business days." Nonetheless, On Target's Manager signed the form as "transferor" and the purchaser signed the form as "transferee," both using a transaction date of September 26, 2001. (Defs.' Ex. 14).

At the hearing, the ATF inspector testified that the form indicated a violation of the regulations, as the shotgun was immediately transferred on September 26, 2001, without either the background check being completed or three days passing without a response from the background check system. (Defs.' Ex. 31, pages 14-15). Haley testified that the form was "misdated" because On Target does not "transfer guns prematurely." In response, the ATF hearing officer asked Haley why Section C of the form, which covers transactions that occur after the purchaser fills out the first part of the form dealing with criminal history and citizenship, including transactions that are delayed while a background check is conducted, was left blank. Haley admitted that On Target should have filled out Section C on the form, thereby indicating a later transaction date other than September 26, 2001, but did not. (Defs.' Ex. 14, page 2, and Ex. 31, pages 17-19).

### D. On Target's Firearm Disposition Records

License holders like On Target are required to maintain records of all firearms transferred in or out of the business in a bound book, listing, for example, the firearm and purchaser's identity. Such records must be created within seven days of the firearms transaction. When comparing On Target's physical inventory of firearms with On Target's bound book of firearm

7

disposition records, ATF found 664 firearms that were not accounted for in On Target's bound book of firearm disposition records. (Defs.' Ex. 31, pages 31-34, 38-48, and Defs.' Ex. 16). Regarding these violations, Haley testified,

> The reference to 237 firearms acquired and 536 firearms disposed of but not properly recorded in the bound book of acquisitions was because of my time constraints due to my extensive and frequent business travel for Anheuser-Busch, my former employer. Previous experience with employees updating the bound book were not successful. It was chaos when I had a former employee try to do that ... So, anyway, I was trying to do this myself, however, because I was working for a different company, other than On Target, I got behind.

(Defs.' Ex. 31, pages 49-50). The ATF Hearing Officer then asked Haley "but what you're doing right now is admitting that you did not timely enter your acquisition?" to which Haley responded "That's correct." Haley said that he "got behind" in documenting transactions from approximately November 2001 through April 2002. (Defs.' Ex. 31, pages 50-56).

### E. On Target's Failed Firearms Tracings

Law enforcement personnel often request ATF to "trace" firearms to determine where a particular firearm was bought or sold and by whom. To conduct a trace, ATF reviews the records of the businesses that transferred the firearm in the past, collecting purchaser information. (42 C.F.R. § 178.25a). ATF attempted to trace three pistols that were recovered by the police through On Target, but On Target had no records of who acquired these firearms from On Target. (Defs.' Ex. 19-21, and Ex. 31, pages 65-69). Regarding these three firearms, Haley testified that he was performing an inventory and believed he would be able to eventually locate the proper records for these pistols. (See Ex. 31, page 70).

**Judicial Review of Administrative Proceeding**

An individual wishing to engage in the business of dealing in firearms must file an application with and receive a license from the Attorney General of the United States. See 18

U.S.C. § 923(a). If the Attorney General approves the application, following payment by the applicant, the Attorney General issues a license allowing the new dealer to engage in the business of dealing in firearms. However, if the Attorney General denies an application for a license, the Attorney General, upon the request of the aggrieved, must hold a hearing to review the denial. See 18 U.S.C. § 923(f)(2). If the denial is upheld, 18 U.S.C. § 923(f)(3) outlines the process for de novo judicial review of the Attorney General's decision. 18 U.S.C. § 923(f)(3) states:

> If after a hearing held under paragraph (2) the Attorney General decides not to reverse his decision to deny an application or revoke a license, the Attorney General shall give notice of his decision to the aggrieved party. The aggrieved party may at any time within sixty days after the date notice was given under this paragraph file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such denial or revocation. In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing held under paragraph (2). If the court decides that the Attorney General was not authorized to deny the application or to revoke the license, the court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the court.

18 U.S.C. § 923(f)(3).

**Applicable Law**

18 U.S.C. § 923(d)(1)(c) provides that an application for a license as a firearms dealer shall be approved if "the applicant has not willfully violated any of the provisions of this chapter [Chapter 44, Title 18, U.S.C.] or regulations [27 C.F.R. § 478.1 et seq.] issued thereunder." 27 C.F.R. § 478.125(e) requires a firearms dealer to make and keep accurate Form 4473s regarding the identity and qualifications of the purchaser and the disposition of any firearms sold by the dealer. 27 C.F.R. § 478.102(a)(2)(ii) requires a firearms dealer to delay the sale of a firearm to a purchaser for three business days if a National Instant Check System ("NICS") background

9

check on the purchaser cannot be immediately accomplished. 27 C.F.R. § 478.99(c) prohibits the sale of firearms to any person previously convicted of a felony offense, aliens, and any persons previously adjudged as mentally defective, as does 18 U.S.C. § 922(d)(1), (4) and (5). 27 C.F.R. § 478.125(e) requires a dealer to accurately maintain a bound book recording the receipt and disposition of firearms in and out of the business, logging such transactions within seven days after their occurrence.

In order to prove a violation of 18 U.S.C. § 923(g) and 27 C.F.R. §§ 478.124 and 478.125 the Attorney General must establish that the licensee "willfully" failed to maintain the proper records. Lewin v. Blumenthal, 590 F.2d 268, 269 (8th Cir. 1979) (per curiam) (citing Shyda v. Director, Bureau of Alcohol, Tobacco and Firearms, 448 F. Supp. 409, 415 (M.D. Pa. 1977)). To meet this burden the Attorney General must prove that the applicant knew of the legal record-keeping requirements and "purposefully disregarded" or was "indifferent to" them. There is no requirement of bad purpose as might be imposed in a criminal prosecution. Shyda, 448 F. Supp. at 19.

The Eighth Circuit reviewed a judgment by this Court which granted summary judgment in favor of respondents, the Secretary of the Department of the Treasury and two directors of the Bureau of Alcohol, Tobacco, and Firearms (BATF), in the owner's action seeking review of a decision by the Secretary to revoke the owner's federal license to sell firearms. Sturdy v. Bentsen, 129 F. 3d 122 (Table), 1997 WL 611765 (8th Cir. Oct. 6, 1997). Relying on Lewin and Shyda, the Court held that summary judgment was appropriate given the uncontroverted evidence demonstrating the owner's awareness of the legal record-keeping requirements and his repeated failure to follow them. The Court concluded that to show a willful violation the BATF had to show the applicant "knew of the legal record-keeping requirements and purposefully

disregarded or was indifferent to them." Sturdy, 1999 WL 611765, *2 (internal quotations and citations omitted).

In the present case an administrative hearing was held on April 27, 2004. This hearing disclosed a large number of violations including failure to keep proper records on sales of weapons, inability to reconcile physical firearms inventory with firearm acquisition and disposition records, and sale of weapons to a convicted felon, an alien, a person who did not answer whether or not he had been previously adjudged as mentally defective, and a person whose background check was not completed at the time of transaction. A de novo review of the evidence leads to the conclusion that the On Target was indifferent to the requirements of the law. As confirmed by Haley at the April 27 administrative hearing, ATF inspectors informed him of his general record keeping and firearm tracing responsibilities and he admitted that he had fallen behind in meeting them. As in Sturdy, given the uncontroverted evidence demonstrating Haley's awareness of the legal record keeping requirements and his repeated failure to follow them, summary judgment is appropriate.

## **Conclusion**

For the foregoing reasons, the Court will grant respondent's motion for summary judgment.

Accordingly, following de novo review,

**IT IS HEREBY ORDERED** that respondents' motion for summary judgment is **GRANTED** . [Doc. 9]

**IT IS FURTHER ORDERED** that petitioner's claims are DISMISSED with prejudice.

**IT IS FURTHER ORDERED** that respondents are awarded the costs of this action to be paid by petitioner, On Target Sporting Goods, Inc.

An appropriate order of dismissal will accompany this memorandum and order.

　　　　　　　　　　　　　　　　　　　　　　／s/ Charles A. Shaw
　　　　　　　　　　　　　　　　　　　　　　**CHARLES A. SHAW**
　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**

Dated this  21st  day of December, 2005.